Virgil L. CRADY, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.

No. 86–5799.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1987.

Decided Oct. 20, 1987.

R. Michael Kelly, argued, Kelly and Albers, Louisville, Ky., for plaintiff-appellant.

Joseph M. Whittle, U.S. Atty., Louisville, Ky., Barbara M. Harris, argued, for defendant-appellee.

Before MERRITT and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

The question presented in this social security appeal is whether the Secretary of Health and Human Services made too "mechanical" an application of the age categories in the "grid" set out at 20 C.F.R., Part 404, Subpt. P, App. 2. Because we conclude that the grid was properly applied, and because the Secretary's findings are supported by substantial evidence, we shall affirm the denial of benefits.

The claimant, Virgil Crady, was born in October of 1929. He attended school only through the third grade. At the time of the hearing before the administrative law judge in 1984, Mr. Crady was 5'6" in height and weighed 124 lbs., down somewhat from his normal weight of 135 lbs. Since 1970 his main employment had been as a junkyard laborer, working at jobs in the "heavy" exertional capacity. Mr. Crady claimed to have quit this work in May of 1980 because the junkyard dust irritated his respiratory system.

Mr. Crady had a history of heart trouble, high blood pressure, past abuse of alcohol, and difficulties with his left knee. (His knee was operated on following an accident suffered in July of 1979.)

The case arises from the denial of the third application filed by Mr. Crady for disability insurance benefits and supplemental security income benefits. The first application, submitted on December 18, 1980, alleged disability from "[i]nactive TB & leg trouble," with a disability onset date of May 5, 1980. This application was denied on February 19, 1981. Mr. Crady did not appeal that decision within the agency. The second application, filed on April 27, 1982, again asserted disability since May 5, 1980. This application listed "[e]mphysema, bad leg, bad back, inactive TB" as the disabling medical conditions. Notice of de-

nial of disability was sent on June 18, 1982; Mr. Crady sought reconsideration, unsuccessfully. According to Mr. Crady's testimony, he was drinking in the summer of 1982 and did not inform his attorney that reconsideration had been denied; consequently, no timely request for a hearing before an ALJ was filed. Mr. Crady's attorney subsequently attempted, without success, to convince the agency that a belated request for a hearing ought to be allowed.

The third application was filed on June 6, 1983. It alleged the same onset date and claimed disability based on heart trouble, emphysema, high blood pressure, arthritis of the left knee, and bad nerves. After benefits were denied, Mr. Crady sought and obtained a hearing before an ALJ.

The ALJ determined that Mr. Crady met the requirements for insured status under the Social Security Act; that he had not engaged in substantial gainful activity since May 5, 1980; that although he suffered from various medically determinable impairments, he did not have an impairment set forth in the "Listing of Impairments" in 20 C.F.R., Part 404, Subpart P, Appendix 1; that Mr. Crady was unable to perform his past relevant work as a junkyard laborer, but retained the residual functional capacity to perform a wide range of unskilled light work activities; that Mr. Crady was 54 years old and had a marginal education; that he did not have any work skills that were transferable to skilled or semi-skilled jobs; and that Mr. Crady being a "person approaching advanced age" (see 20 C.F.R. § 404.1563), Rule 202.10, as set forth in Table No. 2 of the Medical–Vocational Guidelines contained in Appendix 2 of Subpart P, 20 C.F. R. Part 404, "warrants a finding that the claimant is not disabled within the meaning of the Act...." The ALJ went on to find that "[t]he claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision...."

On September 28, 1984, two days after the ALJ issued the decision, Mr. Crady's counsel sent the ALJ a letter requesting reconsideration. The letter acknowledged that the ALJ had "spent a great deal of time in reviewing the extensive medical evidence in this case in an attempt to reach a fair decision," and expressed agreement with the conclusion that there had been no showing of a severe impairment meeting the listings in Appendix 1. "I also understand and agree with you applying the sequential evaluation and [the] Grid," the letter continued, "in all areas except finding # 8." (That finding reads as follows: "[t]he claimant is 54 years old, which is defined as approaching advanced age (20 CFR 404.1563 and 416.963)".) Pointing out that 20 C.F.R. § 404.1563(a) says "we will not apply these age categories mechanically in a borderline situation," the attorney suggested that Mr. Crady be placed in the "advanced age" category (age 55 or over). Rule 202.01 of the grid in Table No. 2 directs a finding of "disabled" for unskilled persons of limited education or less who are limited to light work and are of "advanced age;" promoting Mr. Crady to the higher age category would thus have changed the finding on disability, presumably.

The ALJ did not change his decision, and although the appeals council told Mr. Crady that it had "carefully considered each of the contentions raised by your representative in his letter dated September 28, 1984," the appeals council declined to grant review. Mr. Crady sought judicial review of the agency's decision in an action timely filed in the United States District Court for the Western District of Kentucky. The matter was referred to a magistrate, who, in a carefully drafted ten page report, recommended that the complaint be dismissed. The district court accepted the magistrate's recommendation and entered a final judgment dismissing the complaint. This appeal followed. Mr. Crady died at about the time of the appeal.

\* \* \*

Had Mr. Crady's third application for disability been his first, disability insurance benefits could not have been awarded with respect to any period prior to June of 1982, that being twelve months before the filing

of the application. 42 U.S.C. § 423(b); 20 C.F.R. § 404.621(a); see *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir.1986).[1] In fact, however, Mr. Crady had twice before filed applications for benefits alleging an onset date in May of 1980. When the same claim has been presented in successive applications, the ALJ may choose to apply the doctrine of "administrative *res judicata*." 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1). However, the regulations also provide for the reopening of prior determinations otherwise final because of failure to appeal. 20 C.F.R. §§ 404.987, 416.1487. Determinations by the agency regarding disability benefits may be reopened within 12 months of the date of the notice of the initial determination "for any reason," and within four years of that date for "good cause." 20 C.F.R. § 404.988(a), (b).[2]

■ Although Mr. Crady's third filing did not expressly request reopening, it again asserted an onset date of May 5, 1980. At the administrative hearing, the ALJ observed that Mr. Crady's claim for "the same benefits" had been denied twice before. The ALJ stated "I don't care what they've done before or why they've done it but I'll make an independent decision as to whether you are entitled to these benefits based upon the evidence received here today...." The ALJ made an extensive analysis of the claimant's medical condition through mid–1982, a period as to which no benefits could have been awarded absent a reopening. *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir.1986). The opinion makes no reference to the prior adverse determinations, does not refer to *res judicata*, and concludes that there was no period of disability subsequent to the claimed onset date of May 5, 1980. It appears obvious that the ALJ reopened the prior application, as he may do even though there is no express statement that he has done so. *Wilson v. Califano*, 580 F.2d 208 (6th Cir.1978); *Jelinek v. Heckler*, 764 F.2d 507 (8th Cir.1985); see also *Taylor for*

*Peck v. Heckler*, 738 F.2d 1112 (10th Cir. 1984) (survivor benefits). When a previous application is reopened, benefits may be awarded retroactively based on the date of the original application. See, *e.g.*, *Green v. Mathews*, 550 F.2d 458 (9th Cir.1977).

Although it has sometimes been argued that the date of the filing of the application for benefits is the date as of which the determination of disability ought to be made, no such argument was presented here. The provisions of 20 C.F.R. § 404.620 make it clear that if an applicant applies for benefits before he has become disabled or has otherwise met all the requirements for entitlement, but then meets all requirements (including the requirement of disability) before there has been an ALJ hearing decision, the application will remain in effect until the decision is issued, and benefits may be paid from the first month that the claimant met all the requirements for entitlement. The relevant time for determining whether the claimant is disabled thus appears to be the date of the ALJ's decision. The decision date is the relevant cut-off point for analysis of all factors on which the determination of disability *vel non* is based, including the claimant's age. See *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 780 (6th Cir.1987).

\* \* \*

We review the Secretary's findings to determine whether they are supported by substantial evidence; *i.e.*, "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 366 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971)).

■ Notwithstanding Mr. Crady's testimony that his left knee occasionally gave way and ached, the ALJ was justified in determining that this condition was not a severe impairment under the regulations.

---

1. Mr. Crady's accompanying application for supplemental security income would only permit payments for the months beginning with June of 1983. 20 C.F.R. § 416.335.

2. For supplemental security income the periods are 12 months and two years respectively. 20 C.F.R. § 416.1488(a), (b).

Although the July, 1979, accident required surgery, the post-operative course was uneventful, and the treating physician thought Mr. Crady capable of returning to work, as he in fact did. Examinations by Dr. Caldwell in February of 1981 and by Dr. Upton in May of 1982 disclosed no restriction of motion. X-rays of the left knee taken in 1981 were essentially within normal limits, and those taken in August of 1983 showed only "[m]inor degenerative joint changes...." In August of 1983 Mr. Crady gave Dr. Miller a medical history that described the knee condition as only an "occasional problem" and "not a problem currently."

It is admitted on appeal that Mr. Crady's hypertension was under control during the relevant time frame. In August of 1983 the hypertension was referred to in the medical records as "now treated." Mr. Crady did tell the ALJ he had experienced four or five incidents of severe chest pain in the two years prior to hearing, and nitroglycerine had been prescribed. An EKG in September of 1982 showed an old myocardial infarction and recent ischemia, but as of August, 1983, Mr. Crady was taking the prescribed nitroglycerine at a rate of one tablet per month at most, and the chest symptoms were described by Mr. Crady himself as "not ... too severe...." Dr. Miller merely suspected coronary artery disease and angina, and considered the latter to be only "mild and intermittent" and "compensated."

The etiology of the claimed "bad nerves" is not revealed in the record, but Mr. Crady told the ALJ that "I've had bad nerves all my life." The record suggests no recent psychiatric treatment, except for a notation indicating that Mr. Crady at one point was on undefined "nerve pills." In May of 1982 Mr. Crady told Dr. Upton that he had received psychiatric assistance in the 1960s, but Dr. Upton thought there was currently "adequate psychological compensation...." At the hearing Mr. Crady represented that his hands trembled when he became nervous, but said he was not seeking treatment for the condition. Upon inquiry, the claimant did acknowledge that walking and reading settled his nerves.

The nervous condition may have been related to Mr. Crady's history of alcohol abuse, but he informed the ALJ that he had quit drinking in 1982. Mr. Crady explained that he had a problem with alcohol in the past, most recently beginning in 1979 —a year in which his wife died and he suffered the knee injury at work. The medical notations prior to September, 1982, refer to an alcohol problem, but the absence of further notations confirms Mr. Crady's testimony that he was not abusing alcohol in 1983–84; it is not argued on appeal that Mr. Crady was anything other than a reformed alcoholic at that time.

Perhaps Mr. Crady's most significant medical ailment consisted of a respiratory/pulmonary restriction variously ascribed to emphysema, chronic bronchitis, pulmonary fibrosis, and healed histoplasmosis or tuberculosis without disease. Mr. Crady testified that he quit work in May of 1980 because he could no longer tolerate the dust at the junkyard. He further attested to shortness of breath if exposed to dust or fumes, or when the weather was "real hot," "real humid," or "real cold." Although Mr. Crady testified to being short of breath after walking only a couple of blocks, his applications for disability say that he walked most places, and his comments to the ALJ suggested frequent trips to the local library.

The record contains four pulmonary function studies, performed between May of 1980 and October of 1983. (A subsequent pulmonary function test is not interpreted.) The first test, while showing values lower than predicted, had to be discontinued because Mr. Crady was intoxicated at the time. A May, 1982, test found only minimal improvement with bronchodilators and acknowledged a moderate obstructive ventilatory defect. Dr. Upton nonetheless concluded that only a "mild loss of pulmonary reserve" existed. The third exam, performed in August of 1983, is incomplete; no observations were taken after bronchodilation. The October, 1983, study is complete; it found only a "mild obstructive defect" with "significant improvement post bronchodilator which moves patient's

pulmonary function into 'near normal' values." The 1983 test justified the ALJ's inference that any pulmonary restriction would not preclude light work, and there is no medical opinion to the contrary. A June 29, 1983, letter from Dr. Metallana also indicates that no deterioration had occurred from April, 1982, through early 1983.

█ Given that the various complaints were either "compensated," "now treated," or under control during 1983–84, substantial evidence supports the ALJ's conclusion of no disability even though the "grid" would have pointed to the opposite conclusion if the ALJ had acted after Mr. Crady's 55th birthday instead of before that birthday. The ALJ could have proceeded as if Mr. Crady had already reached age 55, to be sure, because the grid's age categories are not to be treated "mechanically"—and if the ALJ had thought it appropriate to treat Mr. Crady as if he had already reached "advanced age" by the time of the decision, a finding of disability could have been made under Rule 202.01 of Table No. 2. The fact that age categories are not to be applied mechanically, however, obviously does not mean that a claimant must be moved mechanically to the next age category whenever his chronological age is close to that category.

A medical report dictated by Dr. Upton in May of 1982 said that Mr. Crady "appeared older than his stated age of 52," but that observation was not binding on the ALJ, who saw Mr. Crady at a hearing held two years later. The ALJ observed Mr. Crady on the witness stand for more than half an hour, and we are in no position to say that the ALJ erred in placing Mr. Crady in the "approaching advanced age" category, any more than we could say it would have been error to put him in the "advanced age" category. The ALJ's use of the former category was permissible, though not required, and having placed the claimant in that category, the ALJ was correct in his conclusion that "the framework of Rule 202.10 ... warrants" the finding that Mr. Crady was not disabled. For the reasons indicated in our discussion of the date as of which a disability determi-

nation is made, we cannot accept the suggestion of counsel that the disability determination ought to have been made as of the time the appeals council denied review, rather than as of the date of the ALJ's decision.

█ It is claimed that the ALJ could not rely on the grid to reach a conclusion of no disability because Mr. Crady's testimony that breathing was more difficult with exposure to heat, cold, humidity, or dust constituted evidence of a respiratory problem with both exertional and nonexertional components. Where nonexertional limitations exist, the grid is but a framework for the disability determination. 20 C.F.R., Part 404, Subpt. P, App. 2, § 200.00(e)(2). The ALJ did not fully credit Mr. Crady's testimony, and although Mr. Crady at times stated that environmental conditions exacerbated his breathing condition, on other occasions he did not suggest that as a problem. In the absence of a medical opinion indicating environmental restrictions, we think the grid could be relied upon, and a vocational expert was not required to testify to the available jobs where claimant would not be exposed to heat, cold, or dust.

For the foregoing reasons, and for the reasons set forth in the magistrate's report, the judgment is AFFIRMED.

CONTIE, Senior Circuit Judge, dissenting.

The majority has failed to take into account that the Administrative Law Judge's (ALJ's) finding that Crady was unable to perform his past relevant work shifted the burden to the Secretary to establish Crady's ability to work. Even more troubling, however, the majority phrases the main question presented in this case as whether the ALJ applied the age categories in the "grid" too mechanically. I believe the proper question is whether the ALJ applied the "grid" itself too mechanically. Because the ALJ applied the "grid" itself too mechanically, I dissent.

By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir.1978),

the claimant establishes a prima facie case of disability. In the instant case, the ALJ found that Crady was not capable of returning to his particular occupation.

Once the claimant makes out a prima facie case, it becomes the Secretary's burden to establish the claimant's ability to work. *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f)(1); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1953, 76 L.Ed.2d 66 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." *See* 20 C.F.R. pt. 404, subpt. P, app. 2. If the characteristics of the claimant do not identically match the description in the grid, however, the grid is used only as a framework or a guide to the disability determination. *Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 524, 528 (6th Cir.1981).

The Secretary should not have been allowed to rely on a mechanical application of the "grid" to meet his burden in this borderline age case. My conclusion is supported by the Third Circuit's approach in *Kane v. Heckler,* 776 F.2d 1130, 1134 (3d Cir.1985). In *Kane,* upon finding the existence of a borderline age situation contemplated by 20 C.F.R. § 404.1563(a) the Third Circuit remanded the case with the instructions that the ALJ consider which age category to apply, and that the ALJ use the grid primarily as a guide in making the disability determination.

Because I agree with the Third Circuit that the grid should be applied only as a guide in borderline age situations such as this in order to effectuate section 404.-1563(a), I would reverse the district court's judgment and remand this case for further findings.