892 F.2d 80
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia TAYLOR, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-1319.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1989.
 
 Before MERRITT, Chief Circuit Judge, KENNEDY, Circuit Judge, and ROBERT M. McRAE, Jr., Senior District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Patricia Taylor seeks disability benefits on account of mental impairment which she claims prevent her from working. The question on appeal is whether there is substantial evidence in the record to support the Social Security Appeals Council's determination that Taylor, while admittedly suffering from a severe impairment, was nonetheless able to return to her prior employment. The District Court determined that the Record contains substantial evidence to support this position. We REVERSE and grant Taylor benefits.
 
 
 2
 Taylor originally filed for benefits on January 20, 1983. A February 18, 1983 determination denied Taylor benefits. Taylor apparently did not appeal this first ruling, instead filing a second application for benefits on September 28. 1983.[1] In a November 1984 decision, an Administrative Law Judge ("ALJ") found that Taylor did not have a severe impairment and therefore denied benefits. The Appeals Council denied review, but in February 1986 the District Court for the Eastern District of Michigan reversed and remanded the case for a determination under the new mental impairment regulations. The ALJ again denied benefits, but the Appeals Council remanded for further development of the Record. After additional hearings, the ALJ ultimately issued a November 1987 opinion finding that Taylor had been continuously disabled since March 15, 1979 and due to her disability was unemployable. The Appeals Council disagreed and denied benefits. The Council agreed that Taylor was impaired but found that the impairment did not prevent her from resuming her work as an auto worker. A U.S. Magistrate recommended that the Appeals Council's decision be reversed. The Magistrate concluded that the Appeals Council rejected the expert testimony of its own psychiatrists without justification. The District Court rejected the Magistrate's recommendation and without discussion found that "substantial evidence" supported the Appeals Council's decision. This appeal followed.
 
 
 3
 The essential dispute does not concern the existence of Taylor's mental health problems, only the degree of impairment that these problems produce. The parties, as well as the various mental health professionals who have examined Taylor, all agree that Taylor suffers from a passive dependent personality disorder with elements of depression and paranoia. The dispute centers on the conclusions to be drawn from this diagnosis. The Appeals Council found and the Secretary argues that Taylor's condition would not have prevented her from continuing her work as an auto assembly line worker. Taylor asserts that this opinion is not supported by the record and that the Appeals Council should have found her unemployable.
 
 
 4
 In order to qualify for disability benefits, Taylor must first establish the existence of a mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. The mere presence of a mental disorder does not constitute a disability. Taylor must also demonstrate that her impairment renders her unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1520, 404.1520a. Finally, in order to qualify for benefits, Taylor must establish that her mental disability arose and became disabling during the period prior to June 30, 1984, the last day Taylor met the earnings requirement of the Social Security Act.
 
 
 5
 In processing Taylor's claim, the Social Security Administration properly followed a five step evaluation set forth at 20 C.F.R. § 404.1520. The dispute here concerns the fourth and fifth steps which provide that the impairment must prevent the applicant from performing any past relevant work or other work for which the applicant is qualified. The Appeals Council determined that Taylor could perform her prior work as an auto assembly worker and therefore denied benefits.
 
 
 6
 The Secretary's findings of fact are conclusive if supported by substantial evidence, taking into consideration the record as a whole. 42 U.S.C. § 405(g); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971). Final action by the Appeals Council becomes the final action of the Secretary for purposes of review. Where an ALJ's opinion differs from that of the Appeals Council, it is the Appeals Council's decision that this Court reviews under the substantial evidence standard, not the opinion of the ALJ. Mullen, 800 F.2d at 545.
 
 
 7
 Taylor has suffered from depression and other mental health problems since at least the late 1970's. In April 1979 her psychiatrist, Satya Pasricha, convinced Taylor to voluntarily admit herself to a mental institution to be treated for depression and paranoia. The doctor noted specifically that Taylor was depressed and felt persecuted by coworkers and superiors at her auto assembly job. Pasricha released Taylor a month later noting that while Taylor appeared to be less paranoid and depressed, that she should continue to take anti-depressant medication and receive therapy. Except for a brief period in October 1984, the record suggests that Taylor has received little therapy and no longer takes her anti-depressant medication. Taylor returned to work briefly between November 1985 and May 1986 but, because of her mental problems, was unable to continue.
 
 
 8
 The Social Security Administration has required Taylor to see several mental health professionals for evaluation during the course of her benefits claim appeals.[2] The reports from these examinations do not contradict one another. The consensus appears to be that Taylor has a personality disorder that results in depression, fatigue, and paranoia. The doctors expressed minor differences in prognosis, ranging from fair to poor. For the most part, the examiners believed Taylor's prognosis depended on her willingness and ability to enter counseling. The pre-1986 evaluations focused on diagnosing Taylor's condition. Only the two 1986 reports evaluate Taylor's ability to function in a work environment.
 
 
 9
 The Appeals Council did not clearly set forth the basis for its decision. Instead, the Council selectively summarized the record, emphasizing evidence suggesting that Taylor functioned at home without severe impairments, and then asserted that Taylor's disability did not prevent her from working on or before June 30, 1984. More specifically, the Council noted that "Dr. Pfrender's evaluation in November 1983, generally described an individual with no significant pathology" and that Dr. Carron's evaluation in May 1984 "found only mild functional limitations." Id. Discussing the non-medical evidence, the Appeals Council noted that the May 1984 report "also detailed the claimant's activities, which included the caring for her home and three children and help [sic] her mother and grandmother," the implication apparently being that since Taylor could engage in these actions, she could also work.[3] Finally, the Council apparently placed some weight on the fact that Taylor returned to work between October 1985 and June 1986.[4]
 
 
 10
 Based on its readings of the 1983 and 1984 examinations, the Appeals Council also completed a Psychiatric Review Technique form. This form, discussed in the regulations at 20 C.F.R. § 404.1520a, establishes a systematic method for working through psychological disability questions. The Appeals Council apparently concluded that Taylor was not disabled within the meaning of the statute because she could not demonstrate a level of disability sufficient to meet the form's definition of disability.
 
 
 11
 To the extent the Secretary argues that the Psychiatric Review Technique form provides independent evidence of Taylor's ability to work or precludes further analysis, he is incorrect.[5] While the form generally serves to organize the adjudicator's thoughts, its probative value is limited by the medical evidence which supports it. See 20 C.F.R. § 404.1520a ("Following this procedure will assist us in: (1) Identifying additional evidence necessary for the determination of impairment severity; (2) Considering and evaluating aspects of the mental disorder(s) relevant to you ability to work; and (3) Organizing and presenting the findings in a clear, concise, and consistent manner."). More importantly, failure to meet the form's definition of impairment does not clearly preclude a finding that the claimant is unable to work. See 20 C.F.R. § 404.1520a(c)(1) ("If the four areas considered by us as essential to work have been rated to indicate a degree of limitation as 'none' or 'slight' in the first and second areas, 'never' or 'seldom' in the third area, and 'never' in the fourth area, we can generally conclude that the impairment is not severe, unless the evidence otherwise indicates there is significant limitation of your mental ability to do basic work activities (see § 404.1521).") (Emphasis added).
 
 
 12
 The Appeals Council inexplicably failed to discuss much of the evidence. Most importantly, the Council did not explicitly mention Taylor's two 1986 evaluations. The Council stated that after June 1986, the end of Taylor's trial work period, "the evidence shows that the claimant's condition deteriorated to the point that she would probably not have been able to engage in substantial gainful activity." The only evidence in the Record discussing Taylor's ability to work in 1986 are the medical reports of Dr. Heffener and Dr. Pfrender.[6] Both these reports conclude that Taylor could not be usefully employed in 1986. Contrary to the Council's assertion, however, these reports do not show that Taylor's condition deteriorated in 1986. Dr. Pfrender, who had earlier examined Taylor for the Social Security Administration, stated in his May 1986 evaluation that "Ms. Taylor looked and sounded very much as she did when I saw her back in 1983." In his conclusion, Dr. Pfrender stated "My diagnostic impression of this lady remains pretty much the same in that I believe she suffers from severe characterological difficulties with both a passive personality disorder and paranoid disorder." While the 1986 reports are more detailed than the earlier reports and provide a more in depth analysis of Taylor's inability to function in a work environment, there is no information in them that explicitly or implicitly contradicts the earlier evaluations.
 
 
 13
 Since the Appeals Council admits that Taylor could not work after 1986, apparently relying on the two medical evaluations, and since the only testimony discussing Taylor's condition in 1986 relative to 1983 indicates that Taylor's condition did not change, the only reasonable conclusion supported by the record is that Taylor could not work before June 30, 1984. The Secretary argues in his brief that the Appeals Board could reject the 1986 evaluations since they were made well after June 30, 1984. While the Secretary's assertion may be correct in some cases, it nonetheless fails to explain Dr. Pfrender's conclusion that Taylor's condition remained essentially unchanged from 1983. See Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir.1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period can be relevant to a determination of a claimant's condition during that period.").
 
 
 14
 The Secretary makes three additional arguments.[7] First the Secretary asserts that the Appeals Council is free to reject the determinations of non-treating physicians for any reason or no reason at all. While opinions of non-treating physicians are not accorded the weight of treating physicians and can be rejected, this does not mean that they can be totally ignored, particularly where there is no conflicting testimony and no other obvious reason to reject them. See Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir.1984) (dicta) ("We hold that all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ."); cf., Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987) ("While the ALJ was not bound by the opinions of plaintiff's treating physicians, he was required to set forth some reason for rejecting these opinions.").
 
 
 15
 Second, the Secretary argues that the mental health professionals who diagnosed Taylor's condition relied on Taylor's subjective and self-serving statements and complaints in making their evaluations and therefore the Council could properly refuse to credit them. In support of this proposition, the Secretary cites a regulation which states that the Social Security Administration "will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." 20 C.F.R. § 404.1529.[8]
 
 
 16
 While the regulations do require that there be observable evidence other than symptoms, they also allow diagnoses that are based on "medically acceptable clinical diagnostic techniques." In the context of psychological or psychiatric exams, these standards, if strictly applied, would be difficult to reconcile since mental health professionals commonly rely on patient interviews. Psychological examinations can support a claimant's testimony within the meaning of the regulations if the examinations employ medically acceptable diagnostic techniques. See Poulin v. Bowen, 817 F.2d 865, 873-74 (D.C.Cir.1987) ("The record shows just such diagnostic techniques--psychiatric monitoring, interviews, and objective symptomology--as psychiatrists normally rely upon."); Hartman v. Bowen, 636 F.Supp. 129, 131-32 (N.D.Cal.1986); Lebus v. Harris, 526 F.Supp. 56, 60 (N.D.Cal.1981). This ruling is also consistent with the statute which requires only that the symptoms be produced by an abnormality which is "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.A. §§ 423(d)(3) and 423(d)(5a) (West Supp.1989) (emphasis added). The Secretary has not argued that the examination techniques were themselves suspect.[9] On balance, there is no reason to reject the examinations as unprofessional or to conclude that the mental health professionals relied solely on Taylor's statements of her feelings rather than making an objective evaluation.
 
 
 17
 Finally, the Secretary argues that since Taylor was unable to present objective medical evidence to document her own testimony that she was unable to work, the Council was free to reject it. The Secretary is clearly correct that Taylor's description of her symptoms, standing alone, would likely not justify an award of benefits. The statute and regulations require evidence showing that the claimant has a condition that could give rise to the complained of symptoms. See 42 U.S.C.A. §§ 423(d)(3) and 423(d)(5A); 20 C.F.R. § 404.1529. As already discussed, however, Taylor's testimony is supported by the medical evidence. Further, there is uncontested testimony from a vocational expert that Taylor's symptoms, both as described in her testimony and as discussed in the medical evaluations, would prevent her from seeking meaningful employment.[10]
 
 
 18
 Accordingly, the judgment of the District Court is REVERSED and the action is REMANDED with directions to remand to the Secretary for an award of benefits.
 
 
 
 *
 The Honorable Robert M. McRae, Jr., United States Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The Secretary argues, apparently for the first time, that Taylor is precluded by res judicata from asserting benefits for the period prior to February 19, 1983. This argument is foreclosed by this Court's decision in Crady v. Secretary of Health and Human Services, 835 F.2d 617, 620 (6th Cir.1987). In Crady, we held that res judicata did not act to bar a claim where the ALJ treated the case as though it were not barred by a prior benefits claim and where the ALJ was authorized to reopen the case under 20 C.F.R. §§ 404.987 and 404.988. The ALJ's statements in this case indicate that the ALJ intended to make a determination for the entire period for which benefits were claimed, not merely those benefits accruing after the prior claim was filed. See, e.g., ALJ's determination of November 16, 1987, Joint App. at 134 ("Based on the application filed January 20 1983 the claimant has been entitled to a period of disability ... for the period beginning March 17, 1979). Further, reopening was available in this case under 20 C.F.R. § 404.988
 
 
 [2]
 Taylor received psychological examinations by the following persons on the following dates: (1) Dr. Philip Margolis, February 12, 1983, (2) Dr. Richard Pfrender, November 29, 1983, (3) Dr. Dean Carron, May 17, 1984, (4) Dr. Peggy Heffner, May 3, 1986, (5) Dr. Richard Pfrender May 22, 1986. Additionally, the record contains reports from other physicians discussing Taylor's physical cond+tion. While Taylor has undergone a hysterectomy and suffers from a mitral valve prolapse, Taylor does not argue in this appeal that these limit her ability to gain employment
 
 
 [3]
 The Appeals Board appears to mischaracterize the content of these reports on the issue of Taylor's activities. While the reports do support a finding that Taylor helped with household duties, the May 1984 report noted that Taylor received substantial help from her children. Further, while the Appeals Council may be entirely correct that Taylor is able to function to a certain degree in society, this does not mean that she is able to work. The mental health professionals all appeared to recognize that Taylor could function to some degree in society; they none-the-less concluded that Taylor's work skills were substandard. Based on the 1986 evaluations, a career counselor concluded that there was no job that Taylor could perform. The Appeals Council did not reject or even discuss any of these findings
 
 
 [4]
 The Appeals Board did not reject the ALJ's finding that Taylor's work constituted a trial work period within the meaning of 20 C.F.R. § 404.1592
 
 
 [5]
 Furthermore, given the medical testimony below, it is not clear that Taylor cannot establish her inability to work by using the Psychiatric Review Technique form. Many of the Appeals Council's answers on the form do not have substantial support in the record
 
 
 [6]
 Dannelly Smith, a vocational expert, testified for the plaintiff that based on Dr. Pfrender's 1986 report, he believed that Taylor could not be employed in any capacity
 
 
 [7]
 Additionally, the Secretary asserts that Taylor does not qualify for benefits because she failed to follow prescribed treatment that could have alleviated her condition as is required by 20 C.F.R. § 404.1530. Even if we were inclined to make such fact findings for the Secretary, it is not entirely clear that Taylor would lose benefits under 20 C.F.R. § 404.1530 since the treatments must be prescribed by a treating physician, not the Secretary's consultants, and must be able to restore the claimant's ability to work. We do not believe the Secretary should be allowed to raise this issue for the first time on appeal
 
 
 [8]
 The regulations provide the following definitions:
 (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
 (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation and contact with reality. They must also be shown by observable facts that can be medically described and evaluated.
 (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.
 
 
 [20]
 C.F.R. § 404.1528 (emphasis added)
 
 
 [9]
 In any case, while the diagnoses in this case are based in part on Taylor's descriptions of her symptoms, other tests were made as well. See, e.g., Margolis examination, Joint App. at 90-93 (based on questioning of Taylor on subjects unrelated to her symptoms); Heffner examination, R. 199-201 (performed WAIS-R intelligence test, Bender Gestalt test, Draw a Person test, and Rorschach test); Pfrender 1986 examination (reviewed Heffner's tests in addition to discussions with Taylor)
 
 
 [10]
 Taylor argues that the Appeals Council incorrectly failed to credit her testimony that she was unable to work. Taylor cites this court's decision in Beavers v. Secretary of HEW, 577 F.2d 383 (6th Cir.1978) for the proposition that the Appeals Council must justify any decision to reject the credibility determinations of the ALJ. We need not discuss the extent to which the Appeals Council must identify its reason for rejecting the credibility assessments of the ALJ since we have already concluded that the Appeals Council had no reason to reject Taylor's testimony in this case