NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0779n.06
Filed: October 19, 2006

No. 05-2588

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RUTH F. VAN DER MAAS,                        )
                                             )
            Plaintiff-Appellant,             )
                                             )
v.                                           )    ON APPEAL FROM THE UNITED
                                             )    STATES DISTRICT COURT FOR THE
COMMISSIONER OF SOCIAL SECURITY,)            WESTERN DISTRICT OF MICHIGAN
                                             )
            Defendant-Appellee.              )
                                             )    OPINION
_____         )

**Before: GUY, GILMAN, and ROGERS, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge**. Ruth Van der Maas appeals the denial of her

application for disability insurance benefits (DIB) under the Social Security Act. Van der Maas, a

former college professor, filed an application for DIB on August 19, 1996, alleging that she had

become disabled as a result of fibromyalgia, asthma, chronic fatigue and immune dysfunction, joint

problems with her right knee and left ankle, hypothyroidism, connective-tissue disorder, and

somatoform disorder. After an administrative law judge (ALJ) denied her application and the

Appeals Council concurred, Van der Maas appealed to the district court, which granted summary

judgment in favor of the Commissioner of Social Security (Commissioner). For the reasons set forth

below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

A.      **Medical history**

Van der Maas's medical history covers over 800 pages of the Administrative Record in this case. The following is a summary of the most relevant points.

Van der Maas alleges that she became disabled as of March 1, 1995. Her insured status expired on December 31, 1998. *See* 42 U.S.C. § 423(a); 20 C.F.R. § 404.101(a). The most critical evidence in the present case relates to the time period between those two dates.

In February of 1994, Van der Maas underwent surgery to repair a fracture in her left ankle. Her surgeon inserted metal screws and a plate at the site of the fracture to assist in the healing process. Van der Maas experienced complications as a result of the ankle surgery, requiring additional surgery soon thereafter to repair a broken fibula. By the fall of 1994, Van der Maas's X-rays showed a full recovery, and her orthopedist noted that Van der Maas suffered from "no pain" and was "doing well."

In August of 1995, Van der Maas began complaining of general fatigue and weakness. A contemporaneous medical exam proved inconclusive. Van der Maas visited another physician one month later, complaining of a rash, generalized muscle pain, and weakness. That physician, Dr. Martin, surmised that Van der Maas suffered from a fibromyalgia-type illness, somatic preoccupation (meaning that her psychological stress evidenced itself in physical ways), a persistently painful left-ankle fracture, and a right rotator-cuff tear. A few days later, Van der Maas contacted Dr. Martin to complain of blurred vision, fatigue, and work disability. Dr. Martin referred her to a neurologist, who found no neurologic impairment.

In November of 1995, Van der Maas complained to her orthopedist that her left ankle was still causing her pain. Despite the pain, Van der Maas acknowledged that she exercised regularly by swimming.

Van der Maas visited another physician, Dr. Walen, in May of 1996. Because Van der Maas was convinced that she had chronic fatigue syndrome (CFS), she requested that Dr. Walen read materials about the syndrome and change some of her prescriptions. Dr. Walen referred Van der Maas to Dr. Gonzalez, a specialist in allergy and immunology. Van der Maas told Dr. Gonzalez that she might have CFS. In addition to chronic fatigue, Van der Maas complained of difficulty sleeping, difficulty concentrating, migraine headaches, and a wide range of other ailments. Dr. Gonzalez concluded that Van der Maas did not have CFS—which requires that the fatigue be unrelated to any other ailment or condition—because she had several other conditions that were common causes of fatigue.

Van der Maas saw Dr. Huver, her new primary care physician, in October of 1996. She complained of chronic fatigue, muscle pain, difficulty sleeping and concentrating, and short-term memory loss. Dr. Huver determined that Van der Maas likely suffered from fibromyalgia. Van der Maas again visited Dr. Huver in December of 1996 and in March of 1997, each time with a long litany of symptoms. Dr. Huver determined that Van der Maas's complaints did not necessarily correlate with a diagnosis of CFS, and she recommended that Van der Maas seek a psychological evaluation.

During a psychological evaluation conducted by Dr. Jongsma, Van der Maas presented a typewritten document of several pages outlining her symptoms. Van der Maas told Dr. Jongsma that

she still had an active social life that included singing in a local choir, volunteering for the symphony, going to church, counseling a church club, and attending a fibromyalgia support group. In addition to these social activities, Van der Maas did housework, gardened, drove a car, and shopped for groceries. After determining that Van der Maas was exaggerating her problems, Dr. Jongsma diagnosed her as having a somatoform disorder. A somatoform disorder is generally diagnosed where a patient has persistent physical symptoms that cannot be fully explained by a diagnosed medical condition. According to a psychologist who later examined Van der Maas, these symptoms are not intentionally produced or feigned.

Physicians for the state of Michigan performed medical examinations in May of 1997 and March of 1998. They determined that Van der Maas could lift and carry up to 20 pounds, stand or walk for up to 6 hours per work day, and sit up to 6 hours per work day. Psychologists for the state of Michigan began reviewing Van der Maas's medical records in June of 1997. Following two examinations, one in June of 1997 and the other in March of 1998, they determined that Van der Maas was capable of performing unskilled work.

In April of 1998, Van der Maas again complained of pain in her left ankle, which she attributed to the metal screws and plate that remained following her surgery in 1994. Dr. Eastman, Van der Maas's orthopedist, told her that she could undergo surgery for the removal of the screws and plate at her convenience.

In December of 1998, Van der Maas visited the Mayo Clinic. Dr. Ytterberg, a rheumatologist, determined after an examination that there was no objective evidence explaining Van der Maas's fatigue. She also reviewed Van der Maas's various test results and diagnosed her

with fatigue and somatization, a type of somatoform disorder. A psychologist, Dr. Maruta, agreed with the earlier diagnosis of somatoform disorder and recommended that Van der Maas seek psychological counseling.

After Van der Maas returned from the Mayo Clinic, Dr. Eastman removed her ankle screws and plate on December 31, 1998. The stitches were removed from her ankle in January of 1999, and the doctor recommended that Van der Maas engage in exercises to regain motion and strength in her ankle.

Dr. Healey, an orthopedist, examined Van der Maas's left ankle in April of 1999 and found that it was healing well. In May of 1999, Van der Maas again visited Dr. Eastman, who found that Van der Maas suffered from a "bit of swelling" in the ankle. Based on the X-rays, the orthopedist determined that Van der Maas had a calcified loose body in her left ankle that could be repaired with surgery. Van der Maas continued to complain of left-ankle pain, and after Dr. Eastman discovered swelling, warmth, and decreased motion, Van der Maas scheduled another surgery, which she later cancelled due to illness. In her last visit to Dr. Eastman in April of 2000, the orthopedist noted that Van der Maas walked with a "fairly good gait" despite swelling and tenderness in her left ankle.

**B.    Administrative and district court proceedings**

An ALJ denied Van der Maas's initial application in May of 1999, finding that Van der Maas could return to her earlier work as a college professor. The Appeals Council denied review and adopted the decision of the ALJ as the Commissioner's final decision. Van der Maas then sought judicial review pursuant to 42 U.S.C. § 405(g).

The district court remanded the case, ordering further review because the original ALJ did not question Van der Maas thoroughly or give Van der Maas's attorney the opportunity to elicit testimony. On remand, a different ALJ heard Van der Maas's case. The new ALJ concluded that Van der Maas had a somatoform disorder and mild arthritis of her right knee prior to the expiration of her insured status on December 31, 1998. Despite the ALJ's findings regarding these impairments, the ALJ concluded that Van der Maas had the residual functional capacity (RFC) to perform a range of light work with moderate limitations. A testifying vocational expert (VE) concluded that someone with Van der Maas's RFC could perform approximately 15,000 jobs in the national economy. The ALJ therefore concluded that although Van der Maas could not perform her previous job, she was by no means unable to work. After the Appeals Council denied Van der Maas's request for review, Van der Maas filed the present suit in federal court.

Upon reviewing the record, the magistrate judge assigned to the case issued a Report and Recommendation (R&R) recommending that Van der Maas's application for DIB be denied. Van der Maas raised the following two objections to the R&R: (1) that the ALJ improperly relied on the Commissioner's characterization of the evidence, and (2) that the ALJ failed to properly analyze Van der Maas's application as being on the "borderline" for consideration as a person of "advanced age." Addressing these two objections, the district court held that substantial evidence supported the ALJ's findings and that the ALJ adequately considered Van der Maas's age in making his decision. The court then adopted the R&R.

On appeal, Van der Maas challenges the ALJ's determination that her CFS and left-ankle impairment were insufficient to establish DIB. She also argues that the ALJ neglected to consider Van der Maas's "borderline" age in evaluating her RFC.

## II. ANALYSIS

### A.    Standard of review

We must uphold the Commissioner's conclusions if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When reviewing the Commissioner's conclusions, we "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (noting that the court should defer to the agency's decision if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion. . . ." (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997))).

### B.    The ALJ's decision is supported by substantial evidence

In the present case, we are of the opinion that the ALJ applied the correct legal standards and rendered a decision that is supported by substantial evidence. The governing framework for evaluating disability claims is the "five-step sequential process" set forth in the federal regulations.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). This court has summarized the five-step

process as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one [that] "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston*, 245 F.3d at 534 (citations omitted). At Steps 1 through 4, the claimant bears the burden of

proof, but the burden shifts to the Commissioner at Step 5. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d

387, 390 (6th Cir. 2004). Van der Maas challenges the ALJ's reasoning and conclusions as to Steps

2 and 5, claiming that the symptom of chronic fatigue was wrongly diagnosed at Step 2 of the

sequential process and, therefore, was wrongly excluded from consideration of her RFC at Step 5

of the process. She also challenges the ALJ's decision to consider her application according to her

chronological age instead of treating her as a person of advanced age.

### 1.      *Evidence of Van der Maas's impairments*

In order to be classified as a severe impairment for the purposes of Step 2, a medically

determinable impairment or combination of impairments must significantly limit an individual's

physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a). After

considering the medical evidence that Van der Maas suffered from CFS, the ALJ determined that

"any . . . chronic fatigue syndrome . . . which the claimant may experience [is] not medically determinable." The ALJ's discussion of Van der Maas's alleged CFS proceeded as follows:

> The undersigned has considered the claimant's allegation that she experiences fibromyalgia, chronic fatigue syndrome, and/or lupus. SSR 99-2p provides the guidelines on how evaluation is to be made for cases involving chronic fatigue syndrome (CFS). That ruling states that CFS constitutes a medically determinable impairment when it is accompanied by certain medical signs or laboratory findings. The Mayo Clinic reported no clear-cut cause for the claimant's alleged fatigue. There were no trigger points to suggest fibromyalgia or similar causes. Magnetic resonance imaging (MRI) and electroencephalogram (EEG) of the brain were normal. Other testing failed to meet the criteria set forth in SSR 99-2p. . . . It was noted . . . that the claimant's thought content was significant for "preoccupation with her somatic complaints. She was trying to convince me that she had psychological problems. This was partially because of the fact that she could not get Social Security disability."

Van der Maas complains that the ALJ mischaracterized the evidence and failed to consider additional evidence relevant to whether CFS is a medically determinable impairment. She first argues that the lack of a "clear-cut cause" for her fatigue actually strengthens her claim that she has CFS. Van der Maas also contends that the ALJ relied on the negative test results while ignoring the positive test results.

Whether Van der Maas actually suffers from CFS is assessed pursuant to Social Security Ruling 99-2p (SSR 99-2p). According to SSR 99-2p, a physician should make a diagnosis of CFS only after alternative medical and psychiatric causes of chronic fatigue have been excluded. The ALJ properly considered SSR 99-2p, citing the rule to note that "CFS constitutes a medically determinable impairment when it is accompanied by certain medical signs of laboratory findings." After articulating this rule, the ALJ went on to discuss various test results and record evidence establishing that "the claimant has never been diagnosed with or treated for [CFS]."

Even though the ALJ did not discuss (or maybe even consider) every piece of medical evidence relevant to CFS, the evidence that she did consider was substantial. The ALJ noted, for example, that of all the doctors that Van der Maas visited, not one of them had ever diagnosed her with CFS. This fact is instructive, particularly considering that Van der Maas suggested to several of the doctors that CFS might be the cause of her fatigue. None of them agreed with her suggestion, and some determined that her fatigue was caused by other conditions—a clear indication that a CFS diagnosis was not appropriate. The ALJ's determination regarding CFS was therefore supported by substantial evidence, *see* 42 U.S.C. § 405(g), which means that Van der Maas cannot prevail even if the ALJ missed contrary evidence that tends to support a diagnosis of CFS. *See Foster*, 279 F.3d at 353.

Although the ALJ did not conclude that Van der Maas had CFS, the ALJ did determine in Step 2 that Van der Maas's somatoform disorder and arthritis in her right knee constituted severe impairments. The ALJ also found in Step 2 that Van der Maas's ankle condition was a medically determinable impairment, but that Van der Maas "did not have an ankle condition . . . either so restrictive or so painful as to be disabling." Van der Maas argues on appeal that the ALJ misapplied the standard in Step 2 as it pertained to Van der Maas's ankle injury. Rather than "disabling," which is the standard that Van der Maas alleges the ALJ applied in Step 2, the proper standard according to Van der Maas is whether the injury "significantly limits basic work activities." Van der Maas goes on to argue that because her ankle injury kept her from walking or standing, the ALJ should have found her disabled at Step 5 of the sequential process.

We conclude that the ALJ correctly articulated the standard in Step 2 when she noted that a medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. After articulating the standard, the ALJ went on to conclude that there was no evidence that the claimant's left ankle impairment had any effect on her ability to perform work-related activities. The ALJ explicitly noted that Van der Maas's claims of impairment and its impact on her ability to work were not entirely credible in light of her own description of her activities and lifestyle, the degree of medical treatment required, the claimant's demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination. Contrary to Van der Maas's assertion that the ALJ either applied the wrong standard in Step 2 or ignored evidence of her impairment, a review of the ALJ's findings makes clear that the ALJ properly considered the relevant standard and evidence, but simply determined that Van der Maas had exaggerated the level to which she was impaired.

### 2.    *The ALJ followed the proper standard for evaluating borderline age*

Van der Maas was 54 years old when her insured status expired on December 31, 1998, but she was only 55 days short of turning 55 at that time. She therefore argued before the ALJ that because her ailments left her with less mobility and stamina than an average 54-year-old, she should be considered as someone of "advanced age." With that determination, the ALJ would have been required to find Van der Maas disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (providing a framework of medical-vocational guidelines where, in certain cases, the particular combination of a claimant's age, education, work experience, and RFC mandates a finding of disability). The ALJ,

however, determined that "it is not appropriate to consider the claimant to be an individual of advanced age on her date last insured for benefits." On appeal, Van der Maas argues that the ALJ failed to conduct the proper analysis before arriving at this conclusion.

When determining a claimant's age under the medical-vocational guidelines for purposes of DIB eligibility, the claimant's age on the date last insured generally governs. *Curtis v. Sec'y of Health and Human Services*, No. 88-1773, 1989 WL 83869, at *3 (6th Cir. July 28, 1989) (unpublished). The age categories are not to be mechanically applied, however, when the claimant is in a borderline situation. *See Crady v. Sec'y of Health and Human Servs.*, 835 F.2d 617, 622 (6th Cir. 1987) (holding that the ALJ could make his own determination of Crady's age in a borderline situation and was not bound by a medical report stating that Crady appeared older than his chronological age); 20 C.F.R. § 404.1563(b). A borderline situation is present where the claimant is within a few days to a few months of reaching an older age category and where application of the older age category would result in a finding of disability. 20 C.F.R. § 404.1563(b). If both of these factors are present, the ALJ is to use a "sliding scale" approach, taking into consideration the claimant's proffer of "additional vocational adversities" that might warrant moving her to an older age category. *Application of the Medical-Vocational Guidelines in Borderline Age Situations*, Social Security Admin., Ofc. of Hearings and Appeals, *Hearings, Appeals and Litigation Law Manual* (HALLEX) II-5-3-2 (2006). "The fact that age categories are not to be applied mechanically, however, obviously does not mean that a claimant must be moved mechanically to the next age category whenever [her] chronological age is close to that category." *Crady*, 835 F.2d at 622; *see also* 20 C.F.R. § 404.1563(b).

Van der Maas was within a couple of months of reaching an older age category. Although the ALJ acknowledged that fact, the ALJ did not move her to the higher category, presumably because the ALJ did not find that Van der Maas had demonstrated the "additional vocational adversities" required to do so. *See HALLEX II-5-3-2*. The ALJ's failure to explicitly mention the sliding scale, especially considering that she articulated the two factors relevant to the borderline age analysis, does not undermine the ALJ's determination to consider Van der Maas's application according to her chronological age. A review of the ALJ's decision makes clear that the ALJ was unpersuaded by Van der Maas's allegations regarding the extent of her impairments and that the ALJ believed that many of Van der Maas's health problems arose after her insured status had expired. Substantial evidence in the record supports the ALJ's conclusion. *See Heston*, 245 F.3d at 534.

### III. CONCLUSION

For all the reasons stated above, we **AFFIRM** the judgment of the district court.