RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0394a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOSEPHINE BOWIE,

    *Plaintiff-Appellant,*

  *v.*

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant-Appellee.*

No. 07-2125

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 06-14448—Thomas L. Ludington, District Judge.

Submitted: June 2, 2008

Decided and Filed: November 5, 2008

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Marc W. Mulder, CLAYTON, MULDER & HORAN, Waterford, Michigan, for Appellant. Janet Gumm, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, Chicago, Illinois, for Appellee.

  ROGERS, J., delivered the opinion of the court, in which MERRITT, J., joined. MOORE, J. (pp. 9-10), delivered a separate dissenting opinion.

---

**AMENDED OPINION**

---

  ROGERS, Circuit Judge. This Social Security disability appeal presents a single procedural issue regarding whether the Social Security Administration adequately explained its decision. At least on the particular facts of this case, it was procedurally acceptable for the ALJ not to address in his opinion that Bowie was "borderline" between age groups under 20 C.F.R. § 404.1563(b). The district court therefore properly upheld the Commissioner's denial of benefits.

  Suffering from hypertension, aortic stenosis, and recurrent depression, appellant Josephine Bowie filed an application for social security disability benefits on March 29, 2000. Her claim was denied initially and on reconsideration, after which she requested and received a hearing before an ALJ. Bowie was apprised of her right to representation, but proceeded without an attorney. A vocational expert appeared and testified at the hearing. At the time of the ALJ's decision, Bowie was 49 years old and less than two months away from her 50th birthday.

The ALJ filed an opinion on July 13, 2005, in which he concluded that Bowie was not disabled. Proceeding through the five steps of the disability-benefits analysis prescribed in the Social Security Administration's disability regulations, *see* 20 C.F.R. § 404.1520(b)-(g), the ALJ determined that Bowie had not engaged in any substantial gainful activity since her alleged disability onset date (Step 1); that Bowie's impairments are "severe" (Step 2), but do not qualify under the Administration's Listings of Impairments (Step 3); that Bowie is capable of performing unskilled sedentary exertional work; that Bowie is unable to perform any of her past relevant work as an assembler in the automobile industry (Step 4); and that, considering Bowie's residual functional capacity and vocational factors, Bowie is capable of making an adjustment to other work (Step 5). With respect to Step Five, the ALJ concluded that Bowie's past relevant work is unskilled; that she has two years of college education; and that, giving Bowie the benefit of the doubt and according "full credence" to her testimony,[1] there are thousands of jobs in the regional economy requiring only unskilled sedentary work that Bowie could perform. The latter conclusion was based largely on the testimony of the vocational expert, who testified that there were a significant number of unskilled sedentary jobs in the regional economy within Bowie's established residual functional capacity and that Bowie's exertional and nonexertional limitations would not, in combination, preclude the performance of any substantial gainful activity.

Importantly for purposes of this appeal, the ALJ placed Bowie in the "younger individual" age category: "Claimant is a 'younger individual' (20 C.F.R. § 404.1563)." The "younger person" category spans ages 45 to 49, and is followed by the "closely approaching advanced age" category, which spans ages 50 to 54. 20 C.F.R. § 404.1563(c)-(d). Subsection (b) of the regulation governing age categories provides that there is to be some flexibility between the age categories in "borderline" situations:

> How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.*

20 C.F.R. § 404.1563(b) (emphasis added). Other than concluding that Bowie is a "younger individual" and citing 20 C.F.R. § 404.1563, the ALJ did not discuss Bowie's age categorization in his opinion. He did not explicitly address the possibility that Bowie, less than two months shy of her 50th birthday, presented a "borderline" situation, and he did not discuss the possibility of moving Bowie to the "closely approaching advanced age" category.

Bowie subsequently filed a request for review with the Appeals Council, which initially granted her request and remanded the case because the administrative record was missing. Upon locating the record, the order of remand was vacated and Bowie's request for review was denied on August 7, 2007. Bowie then challenged the Commissioner's decision in district court.

Characterizing Bowie's argument as that the "ALJ improperly categorized plaintiff as a 'younger individual' when she should have properly been considered 'closely approaching advanced age,'" the magistrate judge concluded that the ALJ's decision was supported by substantial evidence and that Bowie was properly categorized as a "younger individual." The magistrate judge

---

[1]The ALJ indicated that Bowie's allegations regarding her limitations were "not totally credible."

emphasized that the record contains no evidence of the age-related "additional vocational adversities" described in the Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX). *See Application of the Medical-Vocational Guidelines in Borderline Age Situations*, Soc. Sec. Admin., Office of Hearings and Appeals, *Hearings, Appeals and Litigation Law Manual* (HALLEX) II-5-3-2. Through the HALLEX, the Associate Commissioner of Hearings and Appeals provides "guiding principles, procedural guidance and information" to adjudicators and staff of the Office of Hearings and Appeals. *Id*. I-1-0-1. The HALLEX provisions relied upon by the magistrate judge became effective on November 2, 1993. *Id*. II-5-3-2.

According to the HALLEX, a claimant presents a borderline age situation when: (1) the claimant's age is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability. *Id*. If a claimant presents a borderline situation, the ALJ is directed to decide whether it is more appropriate to use the claimant's chronological age or the higher age. To do this, the ALJ takes a "sliding scale" approach:

> Under this approach, the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

*Id.* Examples of "additional vocational adversities" are the presence of an additional impairment that infringes on the claimant's remaining occupational base; having only a marginal ability to communicate in English; or a history of work experience in an unskilled job in one isolated industry or work setting.[2] *Id.* "Absent a showing of additional adversity(ies) . . . the adjudicator will use the claimant's chronological age." *Id.* Based on his conclusion that the record was devoid of evidence that Bowie had any such "additional adversities,"[3] the magistrate judge recommended that the district court grant summary judgment to the Commissioner.

Bowie objected to the magistrate judge's report and recommendation. She clarified that her claim is that, because she presented a borderline age situation, the ALJ was required in his decision to address 20 C.F.R. § 404.1563(b), the regulation providing for flexibility in borderline age situations. In support, Bowie cited *Wilson v. Commissioner*, 378 F.3d 541, 546 (6th Cir. 2004), for the proposition that "the Commissioner should not have the 'ability to violate regulations with impunity and render the protections promised therein illusory.'" She requested that the district court remand her case to the ALJ "to make a proper determination regarding the age category provisions of 20 C.F.R. § 404.1563(b)."

---

[2] The HALLEX provides fishing and forestry as examples of isolated industries.

[3]

> . . . At the time she filed for benefits, [Bowie] reported that she prepared meals for herself and her children, washed dishes, did the laundry, shopped regularly, visited friends, attended church and enjoyed working on puzzles. Although the medical evidence does establish impairments to [Bowie's] cardiac function, repeated cardiac exercise stress tests were negative for exercise-induced ischemia. Nor were any of the exertional limitations listed by Dr. Mathew in his report . . . inconsistent with the residual functional capacity determined by the ALJ.
>
> As to [Bowie's] alleged mental impairments, Dr. Han reported that Plaintiff undertook many activities, that her insight and self-esteem were "fairly good," that her mental activity was relevant, her speech normal, organized and focused, and that she evidence no hallucinations, delusions or suicidal thoughts. Furthermore, subsequent medical records evidence that [Bowie's] stress level was reduced and that she showed "good progress."

Magistrate Judge's Report and Recommendation at 11 (internal citations omitted).

The district judge adopted the magistrate's report and recommendation, overruled Bowie's objections, and granted summary judgment to the Commissioner. The district judge interpreted Bowie as arguing that "the application of the older age category was both mandatory and would result in a finding of disability," and concluded that Bowie "misinterprets the law," explaining that the "ALJ simply has discretion to apply the older age category if he believes it is warranted." The judge also rejected Bowie's contention that the ALJ did not apply 20 C.F.R. § 404.1563(b), explaining that "[t]he ALJ made a specific finding under section 1563 that the plaintiff was a 'younger individual'" and that, having listed both Bowie's age and birth date, the ALJ was plainly informed of the fact that she was approaching 50 years of age. The district judge concluded that "[u]ltimately, the plaintiff cannot demonstrate that the ALJ disregarded the applicable regulation. At best, she has voiced her dissatisfaction with the effect of that application." Moreover, the judge distinguished *Wilson*, finding the case inapposite: "At issue here is the discretionary application of certain rules governing vocational factors, not the articulation of a reason to depart from a well-established rule for crediting medical evidence."

On appeal, Bowie argues that because she was borderline between age groups,[4] the ALJ was required to apply 20 C.F.R. § 404.1563(b) in determining her age category. On Bowie's reading of the regulation, this means that the ALJ is required to acknowledge Bowie's borderline status explicitly and to make an explicit determination regarding which age group is most appropriate, and that an ALJ's failure to conduct an explicit borderline age analysis constitutes a mechanical application of the age categories in violation of § 1563(b). Accordingly, Bowie argues that the ALJ committed procedural error by not addressing her borderline status or otherwise explicitly indicating that he considered it.

The ALJ's decision to deny Bowie benefits is, however, supported by substantial evidence and not the product of procedural error. While an ALJ may need to provide, in cases where the record indicates that use of a higher age category is appropriate, some indication that he considered borderline age categorization in order to satisfy a reviewing court that his decision is supported by substantial evidence, § 1563(b) does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case.

In regulations addressed to the claimant in the second person, the Administration provides that if a claimant is unable to perform her past relevant work due to her impairment, the Administration will consider the claimant's residual functional capacity combined with her vocational factors—which include age, education, and work experience—to determine if the claimant can make an adjustment to other work. *See* 20 C.F.R. § 404.1520(g)(1) (Step 5). In considering age as a vocational factor, the regulations provide that "'[a]ge' means your chronological age" and that the Administration "will use the age categories in paragraphs (c) through (e) of" 20 C.F.R. § 404.1563. *Id.* § 404.1563(a)-(b). Describing how the Administration will apply the age categories, the regulation informs the claimant that the Administration "will not apply the age categories mechanically in a borderline situation," and explains that in such a situation the Administration will "consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 404.1563(b).

Although ALJs are obligated by this text not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the

---

[4]The parties do not dispute that Bowie presented a borderline age situation—*i.e.*, that she was within a few days to a few months of reaching an older age category, and that using the older category would result in a finding of disability. *See* 20 C.F.R. § 404.1563(b).

regulation merely promises claimants that the Administration will "consider" veering from the chronological-age default in borderline situations.

While not binding on this court, the procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals set forth in the HALLEX bolsters this interpretation. In section II-5-3-2, the Associate Commissioner of Hearings and Appeals provided an Appeals Council interpretation of 20 C.F.R. § 404.1563 entitled "Application of the Medical-Vocational Guidelines in Borderline Age Situations," which interpretation directs ALJs to consider whether the claimant has presented "additional vocational adversities" in determining whether to veer from a claimant's chronological age in a borderline situation. HALLEX II-5-3-2. Appeals Council interpretations are "designed to surface and resolve issues arising from gaps in policy or unclear statements of policy, promote greater consistency and uniformity in applying policy throughout the adjudicatory process, and establish precedents at the hearings and appeals levels of adjudication." *Id*. I-1-0-2. With respect to borderline age situations, the Council advised:

> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. *The adjudicator need not explain his or her use of the claimant's chronological age*.

*Id*. (emphasis added). Moreover, the Appeals Council appears to anticipate that ALJs will not always address the issue of age categorization in cases involving borderline age situations, and explains that in such situations, the Council will typically deny review unless there is a basis in the record for using a higher age category:

> The Appeals Council will ordinarily deny review, assuming there is no other basis for granting review, when a borderline age situation exists, *the ALJ's decision does not address the issue*, and the Appeals Council does not find sufficient basis in the record for using the higher age category.

*Id*. (emphasis added). Thus, not only is there no procedural requirement apparent on the face of 20 C.F.R. § 404.1563(b) to address age categorization explicitly in borderline situations, the Appeals Council also does not presume such a requirement.

This court's decision in *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004), is not to the contrary. Although Bowie is correct that *Wilson* stands for the proposition that remand is appropriate when an agency fails to follow its own procedural requirements, *Wilson* is distinguishable from the instant case in that the ALJ in *Wilson* demonstrably violated a clear elaboration requirement imposed explicitly by the regulations. Section 404.1527(d)(2) promises claimants that the Administration will "always give good reasons in our notice of determination or decision" for not giving weight to a treating physician's opinion in the context of a disability determination. 20 C.F.R. § 404.1527(d)(2). Despite this "good reasons" requirement, the ALJ in *Wilson* rejected the opinion of the claimant's treating physician without providing any explanation. *Wilson*, 378 F.3d at 545. This action violated the ALJ's clear explanatory obligation to "give good reasons" for rejecting a treating physician's opinion. By contrast, the regulations governing borderline age situations do not impose a procedural explanatory requirement. Section 1563(b) does not, for example, promise claimants that the Administration will "give good reasons" for using chronological age in a borderline age situation. Rather, § 1563(b) merely provides that the

Administration will "consider" whether use of an older age category would be appropriate and that it "will not apply the age categories mechanically in a borderline situation."**5**

That § 1563(b) does not impose a *per se* procedural requirement to address borderline age categorization explicitly in every borderline case does not relieve ALJs of their obligation to provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence. For example, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the "younger individual" age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry. *See* Rule 201.18, App. 2 to Subpart P of 20 C.F.R. § 404; HALLEX II-5-3-2. In that situation, the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold.

Such is not the case with respect to Ms. Bowie. As the magistrate judge explained in detail, there is simply no evidence in the record that Bowie suffered from any "additional vocational adversities" that might justify placing her in the higher age category. Moreover, the ALJ indicated that he did not find Bowie's allegations regarding her limitations entirely credible to begin with and that he gave her testimony the benefit of the doubt. Given these circumstances and the lack of any other questionable findings by the ALJ, the ultimate benefits determination is supported by substantial evidence.

Our reasoning is supported by the well-reasoned, albeit unpublished, decision in *Van Der Maas v. Commissioner of Social Security*, 198 F. App'x 521, 528 (6th Cir. 2006):

> Van der Maas was within a couple of months of reaching an older age category. Although the ALJ acknowledged that fact, the ALJ did not move her to the higher category, presumably because the ALJ did not find that Van der Maas had demonstrated the "additional vocational adversities" required to do so. *See* HALLEX II-5-3-2. The ALJ's failure to explicitly mention the sliding scale, especially considering that she articulated the two factors relevant to the borderline age analysis, does not undermine the ALJ's determination to consider Van der Maas's application according to her chronological age. A review of the ALJ's decision makes clear that the ALJ was unpersuaded by Van der Maas's allegations regarding the extent of her impairments and that the ALJ believed that many of Van der Maas's health problems arose after her insured status had expired. Substantial evidence in the record supports the ALJ's conclusion.

It is true that in *Van Der Maas* the ALJ had given a somewhat more explicit indication that she was aware of the claimant's borderline age situation: the ALJ had "articulated the two factors relevant to the borderline age analysis" and had stated that "it is not appropriate to consider the Claimant to be an individual of advanced age on her date last insured for benefits." *See id.* at 527-28. *Van Der Maas* nonetheless supports our reasoning in that we did not find problematic the ALJ's failure to explain her age-categorization reasoning because the ALJ's reasons were apparent from the record.

---

**5**It is worth noting that it is not beyond dispute that the ALJ failed to provide a sufficient indication that he considered Bowie's borderline age situation. The ALJ cited 20 C.F.R. § 404.1563 in categorizing Bowie as a "younger individual," after listing Bowie's birth date and age. The ALJ's citation of § 404.1563 indicates, at the very least, that he was aware of the existence of the regulation governing age categorization. And, as the district court noted, it is fair to assume from the ALJ's notation of Bowie's age and birth date that he realized she was quickly approaching age 50.

We recognize that two cases from other circuits could be construed as being in tension with our conclusion. In *Daniels v. Apfel*, 154 F.3d 1129, 1133-35 (10th Cir. 1998), for example, the Tenth Circuit remanded the claimant's case for failure to "consider" the effect of a borderline situation where the ALJ did not explicitly address which age category best suited the borderline claimant. The court noted that "[d]etermining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding. Even were this considered a discretionary matter, the ALJ would have abused that discretion by failing to exercise it." *Id*. at 1133 n.5 (internal citations omitted). In addition, in a case decided when the grids were new, the Third Circuit remanded a claimant's case for further consideration where the ALJ did not "address" the regulation providing that the Administration "will not apply these age categories mechanically in a borderline situation" and did not consider which age category best suited the borderline claimant. *Kane v. Heckler*, 776 F.2d 1130, 1132-34 (3d Cir. 1985).

Both cases are distinguishable, however. *Kane* was decided prior to the publication of the HALLEX interpretation regarding application of the medical-vocational guidelines in borderline age situations. Before this interpretation was published, the standards for application of a higher age category in a borderline situation were more open-ended, making it less possible for a reviewing court to conclude, in the absence of an explanation from the ALJ, whether an ALJ's decision was supported by substantial evidence when a borderline claimant's chronological age was used. In this context, it arguably made more sense to require an ALJ to provide some explanation for the choice of age categories in borderline situations in order to permit substantial-evidence review.

With the HALLEX interpretation, however, came a more concrete standard: The ALJ is to consider, using a sliding scale approach, whether the claimant has presented sufficient additional vocational adversities to justify use of a higher age category. In the absence of such a showing, "the adjudicator will use the claimant's chronological age" and "need not explain his or her use of the claimant's chronological age." This interpretation now makes it easier, in some borderline-age cases that lack an explanation for age categorization, for a reviewing court to conclude that a decision to deny benefits is supported by substantial evidence. In particular, in a case such as Bowie's where there is no evidence of "additional vocational adversities" or any other consideration that might justify use of a higher age category—and indeed evidence to the contrary—it is not difficult to conclude that the ALJ's benefits decision is supported by substantial evidence despite its lack of an explicit discussion regarding age categorization. As a general matter, agencies need not explicitly reject every legal contention for which there is no substantial basis in the record. The Supreme Court for instance held in *National Railroad Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 419-20 (1992), that a court may properly defer to an agency's unstated legal interpretation where that interpretation was the "only plausible explanation of the issues that the Commission addressed after considering the factual submissions by all of the parties." *Cf. Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001) (concluding that the ALJ's decision was supported by substantial evidence despite the ALJ's failure to discuss the report on which the claimant relied, where it was clear from the record that remand for discussion of the report would not change the outcome).

The Tenth Circuit's decision in *Daniels* is also distinguishable. While *Daniels* was decided—and its underlying administrative determination was made—after publication of the HALLEX interpretation regarding borderline age situations, the *Daniels* court referred to *Kane* in support of its conclusion and does not appear to have been aware of the 1993 HALLEX interpretation. *See* 154 F.3d at 1135 & n.9 (noting that the Commissioner had provided "virtually no guidance" on the meaning of not applying age categories mechanically and stating "the only guidance of which we are aware that the Commissioner has provided related to this matter is his issuance of an Acquiescence Ruling critical of" *Patterson v. Bowen*, 799 F.2d 1455 (11th Cir. 1986)). *Daniels* is therefore distinguishable on the same basis as *Kane*.

To the extent that *Daniels* and *Kane* may nonetheless be read to hold that 20 C.F.R. § 404.1563 imposes on the Commissioner a *per se* procedural obligation to address explicitly a claimant's borderline-age situation in every borderline case, we respectfully disagree.

We affirm the district court's grant of summary judgment to the Commissioner.

---
**DISSENT**
---

KAREN NELSON MOORE, Circuit Judge, dissenting. I am writing in dissent because I believe that we should remand the case as a result of the ALJ's failure to give any indication in his decision as to whether he performed the requisite inquiry under 20 C.F.R. § 404.1563. That section gives the ALJ discretion as to whether to place a claimant falling within a borderline age category into the next higher age category but *mandates* that the ALJ "not apply the age categories mechanically in a borderline situation." § 404.1563(b). Because Bowie's age at the time of the ALJ's decision was less than two months from fifty years old, § 404.1563(b) required the ALJ to consider first whether Bowie falls within a borderline age category and, if so, whether Bowie should have been placed within the "approaching advanced age" category.

I believe that the majority opinion mistakenly concludes that the guidelines set forth in the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") negate the extensive precedent requiring ALJs to discuss whether a potential borderline case falls within that category. Instead, I believe that we should follow the lead of the Tenth Circuit decision in *Daniels v. Apfel*, 154 F.3d 1129 (10th Cir. 1998), and hold that in potential borderline cases, ALJs must provide some record of their thought process regarding the requirements of § 404.1563(b). *See also Russell v. Comm'r of Soc. Sec.*, 20 F. Supp. 2d 1133, 1135, 1136 (W.D. Mich. 1998) (holding that "when a borderline situation is presented a factual determination must be made as to the appropriate age category . . . [and that] the ALJ's failure to explain his choice of age category in a borderline situation . . . impedes judicial review"); *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1169 (W.D. Tenn. 2002) (adopting the Tenth Circuit's rationale in *Daniels* and recommending that the case be remanded because "[t]he ALJ's failure to address the borderline issue and to explain his choice of age category . . . impede this court's ability to review his application of § 404.1563(a)"); *see also Bush v. Astrue*, No. 5:06-00766, 2008 WL 867941, at *7-8 (S.D. W. Va. Mar. 28, 2008) (citing *Russell*, 20 F. Supp. 2d at 1136, and remanding the case because the ALJ's failure to explain his choice of age category made review impossible); *Smith v. Barnhart*, No. 00 C 2643, 2002 WL 126107, at *4 (N.D. Ill. Jan. 31, 2002) (adopting the holding in *Daniels* that the determination of whether a claimant presents a borderline case is a factual determination and that the Commissioner has the burden of proof regarding whether a claimant presents a borderline case); *Barrett v. Apfel*, 40 F. Supp. 2d 31, 39 (D. Mass. 1999) (describing *Daniels* as the "best analysis" of the § 404.1563 and following the reasoning of that decision).

I also find persuasive the Tenth Circuit's reasoning in *Daniels* that the Commissioner and not the claimant has the burden to establish whether a claimant in a potential borderline situation should be placed in an age category higher than that technically warranted by the claimant's chronological age. First, the plain language of § 404.1563(b) states that the Commissioner "will not apply these age categories mechanically"; placing the burden on the claimant would rewrite the language of the regulation. *Daniels*, 154 F.3d at 1134. Second, "[a]pplication of § 404.1563(a) is a step-five issue, and the burden generally is on the Commissioner at step five." *Id.*; *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (holding that the burden of proof rests with the Commissioner at step five).

Additional support for the holding of *Daniels* rests with 20 C.F.R. § 404.953, which requires that "[t]he administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision." § 404.953(a). In a case in which the claimant's age indicates that he or she might well fall within a borderline age category, the ALJ's failure to note that the ALJ has considered whether a claimant falls within a borderline category and, if so, whether bumping the

claimant up is warranted, constitutes a failure to offer findings of fact and reasons for the decision. *Russell*, 20 F. Supp. 2d at 1136.

That the HALLEX guidelines do not require the ALJ to give an explanation for his discretionary decision not to bump up the age of a claimant with a borderline age status does not mean that §§ 404.1563 and 404.953 do not require an ALJ to note whether he has even considered the claimant's potential borderline status. Once the claimant falls within a borderline status—that is, his or her age is near that of the next category and bumping him or her up a category would result in a finding of disability—§ 404.1563 mandates that the ALJ not apply the grid mechanistically. We cannot review on appeal whether the ALJ did so if the ALJ gives absolutely no indication whether he or she even considered the claimant's borderline status. The ALJ does not have to explain why he decided not to exercise his discretion and bump up the age of a borderline claimant, though this would be preferable, but at a minimum he has to note that he considered whether to do so in a non-mechanistic manner.