ROGERS, Circuit Judge.
Plaintiff Robert Caudill appeals the November 25, 2008 decision of an administrative law judge (ALJ) denying him social security disability insurance benefits (SSI), and the district court’s decision to uphold the ALJ’s decision. On appeal, Caudill argues that the ALJ erred in not finding him to be illiterate, and thus disabled, and in not classifying him as a person of advanced age given his borderline-age status. Because the ALJ’s decision contains no legal error and is otherwise supported by substantial evidence, the Commissioner’s decision was properly upheld by the district court.
Robert Caudill, born on January 26, 1954, is a former coal-mine employee living in Kentucky. Caudill first applied for SSI in 1999. That claim was denied by the Social Security Administration initially, upon reconsideration, and by decision of ALJ Burt R. Francis Jr. dated August 28, 2001. ALJ Francis made an extensive evaluation of the evidence and concluded that, although Caudill suffered from a variety of physical ailments and cognitive limi *512 tations, he was still capable of working, and a significant number of suitable jobs existed in the national economy. The Appeals Council denied Caudill’s request for review of ALJ Francis’s decision, making the decision final.[1] This decision was affirmed by the district court in 2002.
Caudill filed a new application for SSI on December 18, 2002. That application was denied initially, upon reconsideration, and by decision of ALJ Richard C. Bentley dated March 17, 2005. The Appeals Council denied Caudill’s request for review of ALJ Bentley’s decision, making the decision final.[2] The case was remanded by the district court for further proceedings on April 24, 2006, due to the loss of Caudill’s December 2004 hearing tape. The Appeals Council vacated the administrative decision and remanded the case for a new ALJ hearing. Prior to that remand, Caudill filed a third application for SSI on March 81, 2005. That application was also denied initially and on reconsideration.
On April 24, 2007, ALJ Bentley issued an opinion consolidating the 2002 and 2005 applications and denying them. Caudill appealed this decision to the district court,[3] which remanded the case for consideration of two issues: (1) the correct period of disability, and (2) Caudill’s objection to inclusion of a report by a physician who was not licensed at the time of Caudill’s examination. The Appeals Council vacated the administrative decision and remanded for a new ALJ hearing. On October 8, 2008, ALJ Roger L. Reynolds held a hearing on Caudill’s claims. ALJ Reynolds issued a decision on November 25, 2008, finding that Caudill was not disabled within the meaning of the Social Security Act and denying him SSI. The Appeals Council took no action with respect to ALJ Reynolds’s decision,[4] thus making that decision final. Caudill sought review in the district court on January 22, 2009.
At the time of the October 8, 2008 hearing, Caudill was fifty-four years old, and was less than four months away from turning fifty-five. He was two months away from turning fifty-five when ALJ Reynolds issued his November 25, 2008 decision. Caudill attended school through eleventh grade. He attended some classes in twelfth grade, but did not graduate from high school. He attended regular (as opposed to special education) classes during the course of his education. There is some *513 evidence that he was required to repeat the third and fourth grades. A psychological evaluation conducted in 2000 determined that Caudill reads at a second-grade level. He has been diagnosed with developmental reading disorder. Caudill testified that he has difficulty reading and writing. He testified that when he tries to read a newspaper, he is unable to understand “a whole lot” of it, and that somebody usually helps him when he is paying bills. However, ALJ Reynolds noted that Caudill had previously stated that he could read and write a grocery list.
The district court’s opinion summarizes relevant information in this case:
[Caudill] has approximately eighteen years of experience working in coal mines as a roof bolter. [Tr., p. 534-36] His alleged disability stems from diabetes and pain in his back, shoulder, and legs. [Tr., p. 124] After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Caudill suffered from the severe impairments of degenerative disc disease at L3/4 and L4/5 with small herniated nucleus pulposus at L5/S1; insulin dependent diabetes mellitus; rule-out cardiomegaly; adjustment disorder with depressed mood; borderline intellectual functioning, estimated; developmental reading disorder; alcohol abuse/dependence, allegedly in remission; and hypothyroidism. [Tr., p. 487] Notwithstanding these impairments, the ALJ found that Caudill retained the residual functional capacity (“RFC”) to perform light work
with lifting and carrying only from tabletop or countertop level of approximately 20 pounds occasionally and 10 pounds frequently; standing a total of approximately 6-8 hours in an 8-hour workday and approximately 1 hour without interruption; sitting a total of approximately 6-8 hours and approximately 1 hour without interruption; requires a sit/stand option at one-hour intervals; can occasionally climb stairs with handrails, ladders, scaffolds or stepstools; occasionally balance, stoop, crouch, kneel and crawl. There must be no constant, uninterrupted use of upper extremities for 8 hours of an 8-hour workday for purposes of reaching, handling, feeling and pushing/pulling; must avoid unprotected heights, moving machinery, temperature extremes, chemicals, dust, fumes, excessive humidity and all other usual pulmonary irritants.
[Tr., p. 489-90] The ALJ further found that Caudill has
a fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention/concentration. He has poor ability to understand, remember and carry out complex job instructions. He has fair ability to understand, remember and carry out detailed but not complex job instructions. He has good ability to understand, remember and carry out simple job instructions. He has fair ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.
[Tr., p. 490] This RFC is identical to the RFC in the August 28, 2001 hearing decision. [Id., n. 1] As a result of ALJ Reynolds’s assessment, Caudill was denied SSI. [Tr., p. 494]
Caudill v. Astrue, No. 7:06-028-DCR, 2009 WL 3270491, at *1-2 (E.D.Ky. Oct.9, 2009).
On October 9, 2009, the district court granted the Commissioner of Social Secu *514 rity’s motion for summary judgment, denied Caudill’s cross-motion for summary judgment, and dismissed Caudill’s SSI claim. Caudill timely appealed to this court. Caudill raises only two issues on appeal: (1) whether the ALJ should have found Caudill to be “illiterate” as defined in 20 C.F.R. § 416.964(b)(1), and thus disabled; and (2) whether the ALJ properly found Caudill to be an individual “closely approaching advanced age,” rather than a person of “advanced age,” given Caudill’s borderline age status.
I. The ALJ properly found Caudill to have a “limited education” and that Caudill was not “illiterate.”
Substantial evidence supports the ALJ’s determination that Caudill had a “limited education” and was not “illiterate.” Grid Rule 202.09 (included in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2) provides that an individual who is “closely approaching advanced age” — that is, age fifty to fifty-four — is disabled if she is “illiterate or unable to communicate in English.” Caudill was fifty-four at the time of ALJ Reynolds’s hearing and decision, and thus was “closely approaching advanced age.” In his decision denying Caudill SSI, ALJ Reynolds found that “[t]he claimant has a limited education and is able to communicate in English (20 CFR 416.964).” 2008 SSI Decision at 9. Pursuant to Grid Rules 202.10 and 202.11, this compelled a determination that Caudill was not disabled.
Caudill argues that ALJ Reynolds improperly adopted ALJ Francis’s previous finding that Caudill has “a limited education,” pursuant to the res judicata rule of Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir.1997). However, it is not entirely clear whether the ALJ reached this finding independently, based on his own analysis of Caudill’s evidence, or by simply adopting ALJ Francis’s finding under Drummond. The ALJ noted that Drummond
requires that consideration be given to the prior Administrative Law Judge decision which contains a finding of a claimant’s residual functional capacity. The Drummond decision requires the undersigned as the adjudicator of this subsequent claim to adopt and be bound by the finding of a claimant’s residual functional capacity or other findings required at a step in the sequential evaluation process. The undersigned cannot reexamine or redetermine the finding of a claimant’s residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances.
2008 SSI Decision at 3-4. The ALJ also stated that he “adopts the residual functional capacity as set forth in the previous final decision as there is no medical evidence of record in contravention of this finding. The undersigned finds no basis for reopening the prior decision in that the conditions for reopening are not met.” Id. at 4. The residual functional capacity assessment, though, is not at issue in this appeal; the finding of “limited education” versus “illiteracy” is. The ALJ gave no indication that he adopted this particular finding from ALJ Francis’s decision pursuant to Drummond. Also, the ALJ cited record evidence that would support a finding of “limited education” as opposed to “illiteracy” independent of the Drummond rule: Caudill admitted being able to read and write a grocery list; Caudill successfully worked for many years; Dr. Stuart Cook opined that Caudill has at least a fair ability to understand, retain, and follow instructions; and Caudill’s educational level.
However the ALJ’s “limited education” finding is viewed, whether as an *515 application of Drummond or as an independent finding, the finding must be upheld. If ALJ Reynolds adopted ALJ Francis’s prior finding that Caudill has a “limited education” and is not “illiterate” pursuant to Drummond, this was proper because the Drummond principle could properly be relied upon in the instant case. In Drummond, the claimant’s initial claim for SSI was denied when the ALJ found that Drummond retained a residual functional capacity for sedentary work. Drummond, 126 F.3d at 838. When Drummond later re-filed her disability claim, a second ALJ found that Drummond retained a residual functional capacity suitable for medium-level work, unlike the sedentary residual-functional-capacity finding of the first ALJ, and denied the refiled claim. Id. at 839. After explaining that “[r]es judicata applies in an administrative law context following a trial type hearing,” id. at 841, this court held that the second ALJ was bound to the sedentary residual-functional-capacity determination of the first ALJ because there was no new or additional evidence of an improvement in Drummond’s condition, id. at 842. “Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.” Id.
Caudill argues that a Drummond-style bar on relitigation cannot apply because the earlier determination did not depend on illiteracy, but the same argument could have been made in Drummond itself. The issue in Drummond was the residual-functional-capacity determination. A medium-level-work residual-functional-capacity determination would not have changed the outcome of the first ALJ hearing in Drummond, because both sedentary and medium residual functional capacities would have resulted in a “not disabled” finding due to Drummond’s age category at the time of her first hearing. These circumstances in Drummond are the same in the present case, except that the issue here is not Caudill’s residual functional capacity, but his literacy/educational. level. In 2001, ALJ Francis found Caudill to have a “limited education” and to not be “illiterate.” In 2008, ALJ Reynolds did the same. Due to Caudill’s age classification at the time of the 2001 hearing, even if Caudill had been found “illiterate,” he would still have been found “not disabled.” Hence, both Caudill and Drummond lacked the incentive to litigate the issue that later became dispositive — literacy in Caudill and residual functional capacity in Drummond. In both cases, the resolution of these issues was not material to the outcome of their first hearings. And just as in Drummond, Caudill introduced no new or additional evidence with respect to “illiteracy” versus “limited education.” The Drummond res judicata rule thus applied just as readily to Caudill’s case as it did to Drummond’s, and supported ALJ Reynolds’ adoption of ALJ Francis’s finding that Caudill had a “limited education” and was not “illiterate.”
In any event, it is not obvious that ALJ Reynolds merely adopted ALJ Francis’s finding of “limited education” versus “illiterate” pursuant to Drummond. Rather, ALJ Reynolds’s finding appears as well to be an independent finding made on the evidence before him. This independent finding is clearly supported by substantial evidence. “Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” McClanahan v. Comm’r of Soc. Sec., 474 F.3d 830, 833 (6th Cir.2006). “The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion---- This is so be *516 cause there is a ‘zone of choice’ within which the Commissioner can act, without the fear of court interference.” Id. (alteration in original).
While record evidence showed that Caudill had a second-grade reading level and was diagnosed with developmental reading disorder, the record also showed the following: he admitted being able to read and write a grocery list; he successfully worked for many years; Dr. Cook opined that Caudill has at least a fair ability to understand, retain, and follow instructions; and he attended school into the twelfth grade and his school records showed that he averaged Bs, Cs, and Ds in high school.[5] This constitutes substantial evidence that Caudill is not “illiterate.” Also, the ALJ found Caudill’s description of his condition and ailments to be less than credible.[6] “The ALJ’s credibility findings are subject to substantial deference on review .... ” White v. Comm’r of Soc. Sec., 572 F.3d 272, 288 (6th Cir.2009) (quoting Barker v. Shalala, 40 F.3d 789, 795 (6th Cir.1994)). This credibility assessment provides further evidence supporting the ALJ’s finding of “limited education” as opposed to “illiterate.” Thus, the ALJ’s “limited education” finding is supported by substantial evidence, independently of the Drummond rule.
II. The ALJ properly categorized Caudill as an individual “closely approaching advanced age” rather than a person of “advanced age.”
The ALJ also properly categorized Caudill as an individual “closely approaching advanced age” rather than a person of “advanced age,” notwithstanding Caudill’s borderline-age status. Although Caudill’s age at the time of ALJ Reynolds’s hearing decision (approximately fifty-four and ten months) placed him in a borderline-age situation, the ALJ provided a sufficient explanation of his disability determination to assure the court that his decision was supported by substantial evidence. This is in accordance with the holding of Bowie v. Commissioner of Social Security, 539 F.3d 395 (6th Cir.2008).
At the time the hearing decision was issued, Caudill was within two months of being re-classified from the “closely approaching advanced age” category to the “advanced age” category. Had he been classified in the “advanced age” category, Caudill would have been deemed disabled pursuant to Grid Rule 202.02. The ALJ, however, classified Caudill in the “closely approaching advanced age” category without further explanation. Under 20 C.F.R. § 416.963(b), the Social Security Administration “will not apply the age categories mechanically in a borderline situation.” According to the Social Security Administration’s Hearings, Appeals, and Litigation Law Manual (HALLEX), in borderline-age situations, the ALJ decides which age category to apply using a “sliding scale approach.” Application of the Medical-Vocational Guidelines in Borderline Age Situations, HALLEX II-5-3-2, 2003 WL 25498826. Under this approach, “the claimant must show progressively more additional vocational adversity(ies) — to support use of the higher age — as the time period between the claimant’s actual age and his or her attainment of the next *517 higher age category lengthens.” Id. Examples of such “additional vocational adversities” include being barely literate in English, having only a marginal ability to communicate in English, and having work experience in unskilled jobs in one isolated industry or work setting. Id. Also, “[o]ther adverse circumstances in individual cases may justify using the higher age category.” Id.
However, as this court held in Bowie, these regulations “do[ ] not impose on ALJs a per se procedural requirement to address borderline age categorization in every borderline case.” Bowie, 539 F.3d at 399. Although ALJs must not apply the age categories mechanically and must “consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant’s borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination.” Id. “Rather,” according to Bowie, “the regulation merely promises claimants that the Administration will ‘consider’ veering from the chronological-age default in borderline situations.” Id. Quoting HAL-LEX language, we explained that “[a]b-sent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant’s chronological age-even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant’s chronological age.” Id. at 400. Bowie presented no record evidence that she suffered from any “additional vocational adversities” that might justify placing her in a higher age category, and her disability determination was otherwise supported by substantial evidence. Id. at 401. That being the case, we upheld an ALJ decision that used Bowie’s chronological-age category even though the ALJ provided no explanation of his reasons for doing so. Id.
Caudill argues that dicta from Bowie demands vacating the ALJ’s finding regarding Caudill’s age category. However, it is Bowie’s holding, not its dicta, that applies to Caudill’s case, such that the ALJ’s decision should be upheld here just as it was in Bowie. The dicta in question comes from a hypothetical example the Bowie court gave in explaining its decision. The court explained that, “[f]or example, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the ‘younger individual’ age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry.” Id. Under this hypothetical, “the claimant’s additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold.” Id. In comparing Caudill’s circumstances to those of the hypothetical example, the evidence shows that Caudill is “barely literate” — his second-grade reading level, developmental-reading-disorder diagnosis, and testimony of reading and paperwork difficulties — and that his work in the mining industry is at least as isolated as the fishing or forestry industries. To this extent, Caudill’s scenario is similar to the hypothetical given by the Bowie court.
However, the differences between Caudill and the hypothetical are more striking, such that Caudill’s ease is controlled by Bowie’s holding instead of its dicta. Caudill’s work is semiskilled, not unskilled as in the hypothetical, and he is capable of performing light work, rather than sedentary work as in the hypothetical. Bowie could only perform unskilled, sedentary work, just as in the hypothetical, and yet the court still found “no evidence in the *518 record that [she] suffered from any ‘additional vocational adversities’ that might justify placing her in the higher age category,” id., or that would even require the ALJ to explain the reasons for his age-categorization decision. Moreover, it is questionable whether the record truly evidences that Caudill is “barely literate,”[7] given the fact that he can at least read and write a grocery list, he attended school all the way into the twelfth grade, and his high school records average Bs and Cs as well as Ds. ALJ Reynolds also found Caudill’s testimony about his alleged limitations less than credible (even regarding his mental limitations, as discussed above). In Bowie, by comparison, although the ALJ “did not find Bowie’s allegations regarding her limitations entirely credible to begin with,” id., he nonetheless “gave her the benefit of the doubt.” Id.
In sum, Caudill’s case compares much less obviously to Bowie’s hypothetical scenario than would at first appear. In fact, Bowie herself may even be more akin to the hypothetical than Caudill: Bowie had two limitations described in the hypothetical (unskilled work history and ability to do sedentary work) and she was given the benefit of the doubt regarding the credibility of her alleged limitations. Caudill, on the other hand, has at most one limitation (work history in an isolated industry) and some inconclusive and contradictory evidence of another limitation (supposedly being “barely literate”). Further, the ALJ found Caudill’s alleged limitations to be less than credible. Although the two cases are not precisely on all fours, Caudill’s case falls within Bowie’s holding.
The judgment of the district court is affirmed.

. Although no record of the Appeals Council’s denial of Caudill’s request for review is available, ALJ Richard C. Bentley discusses this in his April 24, 2007 decision.

. Although no record of the Appeals Council’s denial of Caudill’s request for review is available, Caudill discusses this in his Complaint.

. The record provides no indication of what action, if any, the Appeals Council took with respect to ALJ Bentley’s April 24, 2007 decision, or of whether Caudill even sought review with the Appeals Council before seeking review in the district court. The social security regulations provide that "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case,” 20 C.F.R. § 416.1484(a), that the Appeals Council may assume jurisdiction of the case if the claimant files written exceptions to the ALJ's decision, or on the Council’s own motion, id. § 416.1484(c), and that "[i]f no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commission after remand,” id. § 416.1484(d). In any event, niether party claims that ALJ Bentley's April 24, 2007 was not final for purposes of district-court review.

.Although no record is available showing that the Appeals Council took no action with respect to ALJ Reynolds’s decision, Caudill discusses this in his motion for summary judgment.

. Although ALJ Reynolds did not explicitly state in his hearing decision that Caudill attended school into the twelfth grade and that his grades averaged Bs, Cs, and Ds, the ALJ did refer to Caudill’s "education” on several occasions. See 2008 SSI Decision at 9, 10.

. The ALJ found both Caudill's physical-health and mental-health symptoms to be less than credible. See 2008 SSI Decision at 5 (mental-health symptoms), 8 (physical-health symptoms).

. The term "barely literate” is not defined in the Code of Federal Regulations, HALLEX II-5-3-2, or the Social Security Administration's Program Operations Manual System.