NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0471n.06

Case No. 18-5123

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 14, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELLA FAYE BLACKBURN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. In 2008, Ella Blackburn fell down some stairs and broke her arm. She stopped working as a payroll clerk and filed the first of four applications for Social Security disability insurance benefits. Although she chose not to appeal her first three denied claims, she appealed the fourth to the district court, which affirmed the Social Security Administration. Because the administrative law judge correctly consulted a vocational expert to determine how many jobs Blackburn could perform and permissibly relied on the expert, we affirm.

I.

Ella Blackburn claims that injuries from her 2008 fall and other medical conditions left her with pain in her back, hip, neck, leg, and shoulder. On top of that, she has depression and becomes anxious when her ailments prevent her from doing things.

Blackburn first applied for disability benefits under the Social Security Act in 2008. An administrative law judge denied the application in September 2009. A few days later, she applied again and was denied again in October 2010. She applied a third time in November 2010, receiving yet another denial on May 10, 2012. She did not appeal any of these decisions to federal court.

In September 2013, Blackburn filed a fourth time and continued to argue that her disability began in 2008. Because final administrative proceedings had already found Blackburn not disabled from January 2008 through May 10, 2012, the administrative law judge considered only whether Blackburn qualified as disabled starting on the earliest date not previously adjudicated, May 11, 2012.

In reviewing Blackburn's fourth and most recent application, the administrative law judge did not quarrel with her listing of injuries. But the judge found her statements regarding the "intensity, persistence and limiting effects of [her] symptoms" not "entirely credible." R. 5-1 at 33. Finding that Blackburn still could do some light work, the judge consulted a vocational expert. Based on the expert's testimony, the judge concluded that there were several jobs that Blackburn could perform, precluding eligibility for benefits.

The Administration's Appeals Council affirmed. And the district court rejected her claim as well. This appeal followed.

II.

We review the administrative law judge's application of legal standards with fresh eyes and factual findings for substantial evidence. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

III.

The Social Security Act provides disability insurance benefits to those who cannot perform their prior job or engage in other "substantial gainful work." 42 U.S.C. § 1382c(a)(3)(B). In assessing claims, administrative law judges gauge a claimant's "residual functional capacity"— the work, in other words, an individual still can do. 20 C.F.R. § 404.1545. If the individual cannot do her prior job, the administrative law judge considers whether she can do (1) sedentary, (2) light, or (3) medium work. *Id.* § 404.1520(a)(4)(iv)–(v). The administrative law judge takes this information and plugs it into a grid that accounts for other factors—age, education, and previous work experience—and that determines whether the claimant may be able to handle substantial gainful work. *Id.* pt. 404, subpt. P, app. 2.

But not all individuals fall into single categories. Sometimes a claimant falls between two "ranges of work," such as when someone "can perform more than light but less than medium work," *id.* pt. 404, subpt. P, app. 2 § 200.00(d), making the individual potentially eligible in one direction but not the other. For these in-between situations, the grids provide all they can—general guidance—and an administrative law judge consults vocational experts with "specialized knowledge" to make an informed decision about what jobs a claimant can do. SSR 83-12, 1983 WL 31253, at *2–3 (Feb. 26, 1979).

In Blackburn's case, the administrative law judge correctly followed this process: The judge first determined her residual functional capacity. The judge concluded that Blackburn could work on her feet for four hours in an eight-hour workday, with a break each hour. She also could sit for six hours, with breaks every two hours. The judge also found that her limitations prevented her from returning to her prior employment.

Based on her residual functional capacity, Blackburn fell somewhere between the sedentary and light work categories. She could do some but not all light work, which can involve "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Given Blackburn's age, prior work history, and education, the sedentary work grid would grant her benefits. The light work grid would not. The administrative law judge consulted a vocational expert, who testified that many "light and sedentary jobs" existed in the national economy that Blackburn could perform. R. 5-1 at 54. The expert provided four examples: a routing clerk (light work with 28,000 positions in the nation); a price marker (light work, 55,000 positions); an inspector (sedentary work, 75,000 positions); and a sorter (sedentary work, 48,000 positions). The administrative law judge credited this testimony and found that Blackburn could adjust "to other work that existed in significant numbers in the national economy" and denied the claim. R. 5-1 at 37.

Blackburn challenges this conclusion on three grounds, each unconvincing.

*First*, Blackburn argues that the administrative law judge should have used the grid for sedentary work rather than consulting a vocational expert. Blackburn points to a Social Security ruling that defines "*the full range* of light work [as] requir[ing] standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Feb. 26, 1979) (emphasis added). Because Blackburn cannot stand or walk for six hours a day, she claims that she can do only sedentary work.

But Blackburn mixes the minimum requirements needed to perform *all* light work with the ability to do *some* light work. The ruling also states that walking and standing in sedentary jobs "generally total no more than about 2 hours" a day. *Id.* at *5. Because she can work on her feet for four hours a day, Blackburn falls in the middle between the requirements for *all* sedentary work (two hours) and *all* light work (six hours). That is just what vocational experts are for.

Nor can Blackburn succeed on the slightly different ground that her ailments prevent her from performing certain types of seated light work involving "pushing and pulling of arm-hand or leg-foot controls." *Id.* That reality does not change the fact that her residual capacity falls between the definitions for all sedentary and all light work.

Blackburn adds that she cannot do managerial or professional jobs, leaving a "gloomy prospect for the substantial number of jobs that remain." Appellant's Br. 6. But that risk explains why administrative law judges consult a vocational expert: to determine how many jobs Blackburn can perform. The judge did just that.

*Second*, Blackburn maintains that the vocational expert's testimony proves that "a less than substantial number of jobs" exist in the national economy. *Id.* at 18. Blackburn takes issue with the fact that the vocational expert identified more examples of sedentary jobs (123,000) than light jobs (83,000). According to Blackburn, if the sedentary grid "already determined that the [total] available sedentary jobs . . . is insubstantial," that means the identified light jobs must be insubstantial as well. *Id.* at 7.

That does not follow. Someone like Blackburn who can do some light work can *also* do all types of sedentary work. *See* 20 C.F.R. § 404.1567(b). This means that Blackburn can do more total jobs in the national economy than a comparable person with the same age, education, and work history who can perform only sedentary work. And the 83,000 light jobs that the vocational expert identified provided the administrative law judge substantial evidence to deny Blackburn's claim. *See, e.g.*, *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) ("[S]ubstantial evidence supports the conclusion that [claimant] could perform at least two jobs that are meaningfully available locally (200 jobs) and nationally (6000).").

*Third*, Blackburn claims that the administrative law judge should have exercised her discretion to place Blackburn in an older age category, which would have made her eligible for benefits. She argues that the administrative law judge should have exercised this discretion when she initially "filed back in 2008"—through her first application. Appellant's Br. 8. But Blackburn had sixty days to appeal that decision, 42 U.S.C. § 405(g)–(h), and she did not. Claim preclusion prevents her from relitigating that same period today. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018).

To the extent Blackburn means to contest her age classification for the period pressed in her fourth claim, that is no more helpful. At the point when her eligibility for disability insurance ended, Blackburn was 54, placing her in the "closely approaching advanced age" category. 20 C.F.R. § 404.1563(d). She was a little over six months away from the "advanced age category," defined as 55 and over. *Id.* § 404.1563(e). An administrative law judge need "not apply the age categories mechanically in a borderline situation." *Id.* § 404.1563(b). If a claimant is "within a few days to a few months of reaching an older age category," and the older age category would lead to an award of benefits, the judge may "consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." *Id.*

When asked to bump a claimant to a higher age category, the administrative law judge considers whether a claimant possesses an "additional vocational adversity," such as marginal command of English or a history of unskilled work in an isolated industry. Soc. Sec. Admin., *Hearings, Appeals, and Litigation Law Manual* II-5-3-2 (1993). Blackburn does not identify any additional vocational adversities, instead focusing on her "limited . . . ability to stand," a need for "breaks," and an inability to "engage[] in sustained or overhead work." Appellant's Br. 8. But the judge considered those limitations when determining her residual functional capacity. They

6

are not additional vocational adversities that vault her into the next age category.  As a result, the administrative law judge did not err in using Blackburn's actual, chronological age.  *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 401 (6th Cir. 2008).

We affirm.